16-15255

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**SAFARI CLUB INTERNATIONAL,**

Plaintiff-Appellant,

**v.**

**KAMALA D. HARRIS, in her official capacity as the Attorney General of the State of California; CHARLTON H. BONHAM, in his official capacity as the Director of the California Department of Fish and Wildlife,**

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Eastern District of California

No. 2:14-cv-01856-JAM-AC
The Honorable John A. Mendez, Judge

### ANSWERING BRIEF OF DEFENDANTS-APPELLEES

KAMALA D. HARRIS
Attorney General of California
DOUGLAS J. WOODS
Senior Assistant Attorney General
TAMAR PACHTER
Supervising Deputy Attorney General

ALEXANDRA ROBERT GORDON
State Bar No. 207650
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5509
  Fax: (415) 703-5480
  Email:
  Alexandra.RobertGordon@doj.ca.gov
*Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................ 1

JURISDICTIONAL STATEMENT ............................................. 2

STATEMENT OF ISSUES ........................................................ 2

STATEMENT OF THE CASE .................................................... 2

    I.    The Mountain Lion Prohibition ................................. 2

    II.    Relevant Background ................................................ 5

        A.    Procedural History ........................................ 5

        B.    The District Court Order ............................... 7

SUMMARY OF ARGUMENT .................................................... 8

ARGUMENT ............................................................................. 9

    I.    Standard of Review .................................................. 9

    II.    The District Court Properly Dismissed The First
        Amended Complaint .................................................. 11

        A.    The First Amended Complaint Fails to State a
            Claim Under The Commerce Clause. ............ 12

            1.    Because plaintiff has failed to allege a
                substantial burden on interstate commerce,
                *Pike* balancing is not required. ............ 16

            2.    The Mountain Lion Prohibition serves
                important state interests and its putative
                benefits outweigh any burden on interstate
                commerce. ........................................... 26

        B.    The First Amended Complaint Fails to State a
            Claim Under 42 U.S.C. Section 1983. ............ 36

CONCLUSION .......................................................................... 37

STATEMENT OF RELATED CASES ........................................ 38

# TABLE OF AUTHORITIES

CASES

Anderson v. Holder
    673 F.3d 1089 (9th Cir.2012) .................................................. 32

Ashcroft v. Iqbal
    556 U.S. 662 (2009) ........................................................ passim

Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris
    729 F.3d 937 (9th Cir. 2013) ........................................... passim

Bell Atl. Corp. v. Twombly
    550 U.S. 544 (2007) ......................................................... 10, 12

Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.
    476 U.S. 573 (1986) ......................................................... 13, 14

C & A Carbone, Inc. v. Town of Clarkstown, N.Y.
    511 U.S. 383 (1994) ......................................................... 13, 20

Cal. Pro-Life Council, Inc. v. Getman
    328 F.3d 1088 (9th Cir. 2003) ............................................... 32

Cavel Int'l, Inc. v. Madigan
    500 F.3d 551 (7th Cir. 2007) ........................................... 26, 29

Cervantes v. Countrywide Home Loans, Inc.
    656 F.3d 1034 (9th Cir. 2011) .................................................9

Chinatown Neighborhood Ass'n v. Harris
    33 F. Supp. 3d 1085, 1097 (N.D. Cal. 2014) ......................... 35

Chinatown Neighborhood Ass'n v. Harris
    794 F.3d 1136 (9th Cir. 2015) ........................................ passim

City of Philadelphia v. New Jersey
    437 U.S. 617 (1978) ............................................................. 25

# TABLE OF AUTHORITIES
## (continued)

Page

*Coto Settlement v. Eisenberg*
593 F.3d 1031 (9th Cir. 2010) .................................................. 10

*Cresenzi Bird Importers, Inc. v. State of N.Y.*
658 F. Supp. 1441 (S.D.N.Y. 1987) ........................................ 29

*CTS Corp. v. Dynamics Corp. of America*
481 U.S. 69 (1987) .................................................... 17, 33, 36

*Exxon Corp. v. Governor of Md.*
437 U.S. 117 (1978) ...................................................... 20, 25

*General Motors Corp. v. Tracy*
519 U.S. 278 (1997) ...................................................... 16, 24

*Healy v. Beer Inst.*
491 U.S. 324 (1989) ...................................................... 13, 15

*Huron Portland Cement Co. v. Detroit*
362 U.S. 440 (1960) ............................................................ 22

*In re Century Aluminum Co. Sec. Litig.*
729 F.3d 1104 (9th Cir. 2013) .............................................. 12

*Kassel v. Consol. Freightways Corp.*
450 U.S. 662 (1981) ............................................................ 30

*King v. Christie*
981 F. Supp. 2d 296 (D.N.J. 2013) ........................................ 32

*Lee v. City of Los Angeles*
250 F.3d 668 (9th Cir. 2001) ................................................ 10

*Legislature v. Eu*
54 Cal. 3d 492 (Cal. 1991) .................................................. 29

iii

# TABLE OF AUTHORITIES
## (continued)

Page

*Maine v. Taylor*
477 U.S. 131 (1986)................................................................................ 13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
519 F.3d 1025 (9th Cir. 2008) ...................................................9

*Minnesota v. Clover Leaf Creamery Co.*
449 U.S. 456 (1981)................................................................................ 15

*Missouri Pac. R. Co. v. Norwood*
283 U.S. 249 (1931)................................................................................ 29

*Moss v. U.S. Secret Service*
572 F.3d 962 (9th Cir. 2009) ................................................................ 12

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
682 F.3d 1144 (9th Cir. 2012) ......................................................*passim*

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*
272 F.3d 104 (2d Cir. 2001) ........................................................ 21, 25

*Nat'l Paint Coatings Ass'n v. City of Chicago*
45 F.3d 1124 (7th Cir. 1995) ................................................................ 27

*Old Bridge Chemicals, Inc. v. New Jersey Dep't of Envtl. Prot.*
965 F.2d 1287 (3d Cir. 1992) ................................................................ 23

*Oregon Waste Systems, Inc. v. Department of Environmental Quality*
511 U.S. 93 (1994)................................................................................ 14

*Pacific Nw. Venison Producers v. Smitch*
20 F.3d 1008 (9th Cir. 1994) ......................................................*passim*

*Perez v. Nidek Co., Ltd.*
711 F.3d 1109 (9th Cir. 2013) .............................................................. 12

# TABLE OF AUTHORITIES
## (continued)

Page

*Pike v. Bruce Church, Inc.*
397 U.S. 137 (1970)........................................................................ *passim*

*ProtectMarriage.com v. Bowen*
599 F. Supp. 2d 1197 (ED. Cal. 2009) .................................... 32

*PTI, Inc. v. Philip Morris, Inc.*
100 F. Supp. 2d 1179 (C.D. Cal. 2000) ................................. 36

*Ridge at Red Hawk, L.L.C. v. Schneider*
493 F.3d 1174 (10th Cir. 2007) ............................................. 12

*Safari Club Int'l v. Harris*
No. 2:14-CV-01856-GEB-AC, 2015 WL 1956869 (E.D.
Cal. Apr. 29, 2015) ................................................................ 32

*Shroyer v. New Cingular Wireless Services, Inc.*
622 F.3d 1035 (9th Cir. 2010) ............................................... 11

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) ................................................. 10

*U.S. R.R. Ret. Bd. v. Fritz*
449 U.S. 166 (1980)................................................................ 32

*Valley Bank of Nev. v. Plus Sys., Inc.*
914 F.2d 1186 (9th Cir. 1990) ............................................... 17

*Voice for Animals v. Adidas Promotional Retail Operations,
Inc.*
41 Cal. 4th 929 (Cal. 2007) ................................................... 29

*West v. Atkins*
487 U.S. 42 (1988)................................................................. 36

v

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Yakima Valley Mem'l Hosp. v. Washington State Dep't of*
  *Health*
  753 F.3d 843 (9th Cir. 2013) ..................................................... 26, 27, 30

**FEDERAL STATUTES**

United States Code, Title 42
  § 1983 ........................................................................................... *passim*

**STATE STATUTES**

California Fish and Game Code
  § 2780 ................................................................................... 2, 28, 33
  § 4800 ......................................................................................... *passim*
  § 4801 .......................................................................................................5

California Stats. 1967, Chapter 196
  § 1 .............................................................................................................3
  § 2 .............................................................................................................3

California Stats. 1963, Chapter 2022
  § 1 .............................................................................................................3

**RULES**

Federal Rule of Civil Procedure
  8 ..................................................................................................... 11, 35
  12 ..................................................................................................... 1, 9

Federal Rule of Evidence
  201 ................................................................................................... 7, 10

**OTHER AUTHORITIES**

Blake P. Temple, *Chapter 435: Protecting Endangered and*
  *Threatened Sheep Species from the Prolific California*
  *Mountain Lion*, 31 MCGEORGE L. REV. 426, 428 (2000)...........................2

# INTRODUCTION

To protect mountain lions, promote the conservation and sustainability of its wildlife, and prevent animal cruelty, California Fish and Game Code section 4800 (the Mountain Lion Prohibition) makes it illegal to kill, injure, possess, import, or sell a mountain lion or mountain lion parts in California. Plaintiff alleges, in relevant part, that the prohibition on importation, transportation, and possession of mountain lion and mountain lion parts legally hunted in other states and jurisdictions violates the Commerce Clause of the U.S. Constitution. The district court correctly dismissed this claim.

The First Amended Complaint is largely comprised of boilerplate legal conclusions that fail to satisfy the pleading burden under Federal Rule of Civil Procedure 12(b). Moreover, and of greater significance, because the Mountain Lion Prohibition does not implicate the Commerce Clause, let alone violate it, plaintiff's claim must fail as a matter of law. The Mountain Lion Prohibition is facially neutral, does not discriminate in favor of in-state interests or against out-of-state interests, does not regulate extraterritorially, and is rationally related to legitimate governmental interests in protecting and conserving mountain lion populations and preventing animal cruelty. Because plaintiff cannot demonstrate that the Mountain Lion Prohibition is

unconstitutional, it cannot state a claim upon which relief can be granted.

Accordingly, this Court should affirm the district court's judgment.

## JURISDICTIONAL STATEMENT

Defendants agree with plaintiff's Jurisdictional Statement.

## STATEMENT OF ISSUES

1.     Did the district court err in dismissing the Complaint with prejudice for failure to allege a legally cognizable claim under the dormant Commerce Clause?

2.     Did the district court err in dismissing the Complaint with prejudice for failure to allege a legally cognizable claim under 42 U.S.C. section 1983?

## STATEMENT OF THE CASE

### I.     THE MOUNTAIN LION PROHIBITION

The Wildlife Protection Act of 1990, California Fish & Game Code sections 2780 et seq., was approved by the voters as Proposition 117 on June 5, 1990.  Until the 1960s, California operated under a bounty system.  *See generally* Blake P. Temple, *Chapter 435: Protecting Endangered and Threatened Sheep Species from the Prolific California Mountain Lion*, 31 MCGEORGE L. REV. 426, 428 (2000).  Between 1907 and 1963, bounty hunters in California killed more mountain lions than in any other state,

approximately 12,500.  In 1969, the species was given protection and designated a game mammal, a designation it held until recreational hunting of lions was outlawed in 1972.  In response to proposed hunting seasons in the late 1980s, Proposition 117 was placed on the ballot in 1990.  *See generally* Plaintiff-Appellant's Excerpts of Record (ER) 64-67 (Cal. Sec'y of State, California Ballot Pamphlet 40-43 (1990)); 1963 Cal. Stat. ch. 2022, § 1, at 4146; 1967 Cal. Stat. ch. 196, §§ 1 & 2.  The proponents of Proposition 117 argued that mountain lions, which were the "one remaining symbol of [California's] wilderness heritage," needed continued protection from the "cruel and unnecessary" practice of trophy hunting, which they described as follows:

> A pack of hounds is set on the trail of the big cat until the exhausted lion seeks refuge in a tree.  The trophy-hunter (who sometimes is brought in from hundreds of miles away after paying a huge fee to the houndsman) then walks over and blasts the lion off the limb at point-blank range.  When nursing mothers are shot, the kittens starve.  *THIS IS NOT A SPORT; THIS IS A SLAUGHTER*.

ER 66 (emphasis in original).

Proposition 117 made a number of findings, including that: (1) the "[p]rotection, enhancement, and restoration of wildlife habitat and fisheries are vital to maintaining the quality of life in California"; (2) "there is an

urgent need to protect the rapidly disappearing wildlife habitats that support California's unique and varied wildlife resources"; and (3) wildlife habitat, specifically including mountain lion habitat, "is disappearing rapidly"; and (4) "natural habitat must be preserved to maintain the genetic integrity of California's wildlife."  Prop. 117 § 2(a) & (d).

In keeping with these findings and with the State's policy of preserving and conserving all species of wildlife, and to protect mountain lions as the last native large predator species in California and stop the "cruel and unnecessary" slaughter of mountain lions, ER 66, Proposition 117 added the Mountain Lion Prohibition, California Fish & Game Code sections 4800 et seq., which designate the mountain lion as a "specially protected mammal" and make it illegal to "take, injure, possess, transport, import, or sell any mountain lion or any part thereof."  Cal. Fish & Game Code § 4800. Violation of the Mountain Lion Prohibition is a misdemeanor punishable by imprisonment of up to one year, or a fine of up to $10,000, or a combination of imprisonment and a fine.  *Id.* § 4800(c).  The Mountain Lion Prohibition does not apply to any mountain lion or part or product thereof that an owner can demonstrate was in his or her possession on June 6, 1990.  *Id.* § 4800(b)(2).  The Mountain Lion Prohibition also contains two exceptions: one for an agency taking of a mountain lion deemed an "imminent threat to

public health or safety" and another for citizens to acquire a permit to take a mountain lion that has "injured, damaged, or destroyed" livestock or other property. *Id.* § 4801. The Legislature amended the Mountain Lion Prohibition in 2011 to allow for the possession of mountain lion parts where all of the following requirements are met: (1) the mountain lion carcass or carcass part or product is prepared or being prepared for display, exhibition, or storage, for a bona fide scientific or educational purpose; (2) the mountain lion was otherwise taken in accordance with the Mountain Lion Prohibition and/or other applicable law; and (3) the Department of Fish & Wildlife authorizes the possession. *Id.* § 4800(b)(3).

## II. RELEVANT BACKGROUND

### A. Procedural History

Plaintiff Safari Club International is a non-profit corporation incorporated in the State of Arizona, with approximately 13 chapters and 4,400 members in California. ER 28. Plaintiff's "missions include the protection of the hunter, and education of the public concerning hunting and its use as a conservation tool." ER 28. To advance these missions, plaintiff advocates for "enhanced opportunities to hunt and the ability to enjoy the fruits of hunts, including by being able to import, transport, and possess mountain lions legally hunted outside of California." ER 28. On August 6,

5

2014, plaintiff filed its Complaint for Declarative and Injunctive Relief (Complaint). Plaintiff sued Kamala D. Harris, in her official capacity as the Attorney General of California and Charlton H. Bonham, in his capacity as the Director of the California Department of Fish and Wildlife, alleging that the Mountain Lion Prohibition violates the Commerce and Equal Protection Clauses of the United States Constitution as well as 42 U.S.C section 1983.

By order dated April 29, 2015, the district court granted defendants' motion to dismiss and granted plaintiff leave to file a First Amended Complaint. ECF No. 37. In so doing, this Court determined that plaintiff had failed to allege the lack of a rational basis for the Mountain Lion Prohibition or to allege that any burdens on interstate commerce caused by the Mountain Lion Prohibition are "clearly excessive" compared to its putative benefits, and thus that plaintiff had failed to state a claim under the Equal Protection Clause or the dormant Commerce Clause. *Id.* The district court granted leave to amend, and plaintiff filed its First Amended Complaint (FAC) on May 13, 2015. District Court Case No. 2:14-cv-01856, ECF No. 38. Defendants moved to dismiss, and the district court granted the motion on January 6, 2016. ER 5-20. The district court again granted plaintiff leave to amend, but plaintiff instead moved for final judgment,

which was granted on January 21, 2016.  ER 4.  Plaintiff timely appealed.
ER 1-2.

### B.    The District Court Order

By order dated January 6, 2016, the district court granted defendants'
motion to dismiss the FAC.  ER 5-20. [1]  The district court determined that
plaintiff had failed to allege plausible claims for relief under the Equal
Protection and dormant Commerce Clauses, as well as 42 U.S.C. section
1983. [2]  With respect to plaintiff's Commerce Clause claim, the district court
reviewed the FAC and held that plaintiff "does not allege that the [Mountain
Lion Prohibition] has any discriminatory effect, and it cannot establish a
significant burden on interstate commerce."  ER 18-19 (citing *Chinatown
Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1146 (9th Cir. 2015), *cert.
denied*, No. 15-798, 2016 WL 2945289 (U.S. May 23, 2016)) (internal
quotation and punctuation omitted).  It noted that plaintiff "does not allege

---

[1] The district court also granted in part defendants' request for judicial
notice, pursuant to Federal Rule of Evidence 201, of the California Ballot
Pamphlet for Proposition 117, ER 9, 63-70, as well as plaintiff's request for
judicial notice of various articles, documents, and websites, ER 10-12, 71-
164.

[2] Plaintiff does not appeal from the district court's dismissal of its
equal protection claim.  *See* Opening Brief of Plaintiff-Appellant Safari Club
International (AOB), ECF No. 6 at 1 n.1.  Accordingly, the district court's
analysis of plaintiff's Equal Protection Clause claim is not set forth here.

facts showing that the hunting of mountain lions and the showcasing of them as trophies is 'inherently national' nor that it requires a 'uniform system of regulation.'" ER 19 (citing *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012)). The district court stated that while plaintiff had alleged that the Mountain Lion Prohibition has resulted in lost profits for the hunting industry, these effects did not satisfy plaintiff's burden to demonstrate a "substantial burden" on interstate commerce. ER 19 (citing *Pacific Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994)).

The district court concluded that because the Mountain Lion Prohibition was not discriminatory and plaintiff had not alleged a significant burden on interstate commerce, pursuant to this Court's dormant Commerce Clause jurisprudence, it was not required to apply the balancing test articulated by the Supreme Court in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), and it would be "improper" to examine the putative benefits of the statute. ER 20. Accordingly, the court dismissed plaintiff's dormant Commerce Clause claim. ER 18-20.

## SUMMARY OF ARGUMENT

The district court properly determined that plaintiff did not state cognizable claims for relief under the dormant Commerce Clause and 42

U.S.C. section 1983.  The FAC consists of little more than criticisms of the

purposes and effect of the Mountain Lion Prohibition, allegations regarding

harm to the business interests of plaintiff's members and other individuals

engaged in the trade and trafficking of mountain lions and mountain lion

products, and unsupported legal conclusions.  Even after amendment,

plaintiff failed to allege plausible claims for relief under the dormant

Commerce Clause.  The Mountain Lion Prohibition neither discriminates

against interstate commerce, nor regulates extraterritorially, and plaintiff has

failed to allege any cognizable burden on interstate commerce, and certainly

not one that would clearly exceed the statute's putative benefits.

Accordingly, the district court correctly dismissed the FAC.

## ARGUMENT

### I.  STANDARD OF REVIEW

This Court reviews de novo an order dismissing a complaint pursuant

to Federal Rule of Civil Procedure 12(b)(6).  *Manzarek v. St. Paul Fire &*

*Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008).  On appeal, this Court

applies the same standards as the district court.  *Id.*  "'To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face.'"  *Cervantes v.*

*Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011)

(citation omitted).  A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id*.  The appellate court must accept as true all factual allegations in the complaint.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Beyond the face of the complaint and any items attached thereto, the appellate court may also consider the following documents if part of the district court record:  (a) documents identified in the complaint that were not attached but central to the plaintiff's claims, (b) court records and other public records, and (c) matters otherwise judicially noticeable under Federal Rule of Evidence 201.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

## II. THE DISTRICT COURT PROPERLY DISMISSED THE FIRST AMENDED COMPLAINT

Plaintiff brought a facial challenge to the Mountain Lion Prohibition on the grounds that it violates the Commerce Clause of the United States Constitution as well as 42 U.S.C. section 1983. However, as the district court held, plaintiff failed to allege sufficient facts to state a cause of action. ER 16-20. Even under the most generous and favorable reading, the FAC does not suggest that it is *possible,* let alone plausible, that the Mountain Lion Prohibition violates the dormant Commerce Clause.

As a threshold matter, and contrary to its understanding, *see* AOB 21-22, plaintiff was not asked to prove its case at the pleading stage; it was properly held to its burden to allege viable claims for relief. As discussed below and as the district court determined, plaintiff has not met this burden. Dismissal is appropriate when a complaint either fails to allege a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The FAC fails to do both. Although plaintiff is correct that the pleading requirements are fairly liberal, *see* AOB 20-21, Federal Rule of Civil Procedure 8 does require it to set forth "factual content that allows the court to draw the reasonable inference that [] defendant[s] are

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The FAC, which contains little more than legal conclusions, unwarranted deductions, and unreasonable inferences, falls well short of this standard. *See Moss*, 572 F.3d at 969; *see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."). Accordingly, the district court properly dismissed the FAC. *See Iqbal*, 556 U.S. at 678-79; *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146-47; *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1110 (9th Cir. 2013); *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113 (9th Cir. 2013).

## A.  The First Amended Complaint Fails to State a Claim Under the Commerce Clause.

The district court correctly determined that plaintiff failed to allege a cognizable claim under the Commerce Clause. *See Twombly*, 550 U.S. at 557, 570; *Nat'l Ass'n of Optometrists*, 682 F.3d at 1147-57. The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const., art. I, § 8, cl. 3. The

Commerce Clause includes an implied limitation on the states' authority to adopt legislation that affects commerce, which is often referred to as the negative or dormant Commerce Clause. *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989). The purpose of the dormant Commerce Clause is to "prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994). However, its restrictions are "by no means absolute" and "[s]tates retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected." *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (citations and quotations omitted). "As long as a State does not needlessly obstruct interstate trade or attempt to place itself in a position of economic isolation, it retains broad regulatory authority to protect the health and safety of its citizens and the integrity of its natural resources." *Id.* at 151 (citations and quotations omitted).

Whether state legislation violates the dormant Commerce Clause is generally analyzed under a two-tiered approach. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986). A statute is essentially per se invalid if it directly regulates or discriminates against

interstate commerce or if its effect is to favor in-state economic interests over out-of-state interests. *Id*. at 579. On the other hand, when a statute is nondiscriminatory and "has only indirect effects on interstate commerce and regulates evenhandedly, [the Court has] examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Id*. (citing *Pike*, 397 U.S. at 142).

Plaintiff does not argue, nor could it legitimately do so, that the Mountain Lion Prohibition either discriminates against interstate commerce or regulates extraterritorially. *See* AOB 25. For purposes of the dormant Commerce Clause, discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93, 99 (1994).

Plaintiff does not, and cannot, allege that the Mountain Lion Prohibition discriminates in favor of in-state interests. The Mountain Lion Prohibition bans, subject to limited exceptions, the killing, injuring, possession, transport, importation, or sale of mountain lions and/or mountain lion product or parts in California. *See generally* Cal. Fish & Game Code § 4800. The Mountain Lion Prohibition regulates even-handedly and treats all mountain lions and/or mountain lion parts equally, regardless of their

point of origin. Accordingly, it does not discriminate against interstate commerce. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 398 (2014); *Pacific Nw. Venison Producers*, 20 F.3d at 1012. The Mountain Lion Prohibition also does not, either directly or indirectly, control commerce occurring wholly outside of California. To the contrary, by its terms, the Mountain Lion Prohibition regulates conduct — specifically, the killing, injuring, possession, transport, importation, or sale of mountain lions — only in and into California. *See* Cal. Fish & Game Code § 4800. It thus is not an impermissible extraterritorial regulation. *See Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 548 (1981).

Plaintiff argues instead that under the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. at 142, the Mountain Lion Prohibition's "substantial impact" on interstate commerce exceeds its putative local benefits and that these benefits are illusory. This argument fails as a matter of law. Even after amendment, plaintiff failed to allege a substantial burden on interstate commerce and thus, *Pike* balancing is not required nor appropriate. Moreover, and regardless, because any burdens on interstate

commerce caused by the Mountain Lion Prohibition are not "clearly excessive" to its putative benefits, the statute is valid under *Pike*.

> **1.    Because plaintiff has failed to allege a substantial burden on interstate commerce, *Pike* Balancing is not required.**

Plaintiff is not entitled to balancing under *Pike*.  This is not, as plaintiff suggests, because defendants or the district court contend that mountain lions are not articles of commerce and/or that Congress lacks the authority to regulate the interstate transportation of mountain lions.  AOB 27-29.  Rather, *Pike* balancing is not warranted because application of the *Pike* test requires that a plaintiff first establish a substantial burden on interstate commerce, and the FAC fails to do so.  *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Ass'n des Eleveurs de Canards*, 729 F.3d at 952.  As this Court has held, a "state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce."  Rather, "[a] critical requirement for proving a violation of the dormant Commerce Clause is that there must be a *substantial burden* on *interstate commerce*."  *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148 (emphasis in original).  This Court has explained that most regulations that are struck down under *Pike* are invalid because of discrimination.  *Id.*, 682 F.3d at 1148; *see also General Motors Corp. v. Tracy*, 519 U.S. 278,

299 n.12 (1997) (citing cases and concluding that "several cases that have purported to apply the undue burden test (including *Pike* itself) arguably turned in whole or in part on the discriminatory character of the challenged state regulations"); *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146 ("[O]nly a small number of . . . cases invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory . . . .") (citation omitted).

In a "small number" of dormant Commerce Clause cases, courts have also invalidated statutes that created inconsistent regulation of activities that "are inherently national or require a uniform system of regulation," almost all of which involve attempted regulation of interstate transportation. *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148-49; *see also CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 88 (1987) (contrasting transportation cases with Indiana law regulating takeovers); *Ass'n des Eleveurs de Canards*, 729 F.3d at 952 ("[E]xamples of courts finding uniformity necessary fall into the categories of transportation or professional sports leagues.") (alteration and quotation marks omitted); *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1192 (9th Cir. 1990) (distinguishing transportation cases and cases involving national sports leagues as those requiring national uniformity).

As the district court determined, plaintiff has failed to allege a cognizable "substantial burden" within the meaning of the dormant Commerce Clause. The FAC does not allege that the regulation of mountain lions and mountain lion products is "inherently national," and it is not, or that the mountain lion trade requires a "uniform system of regulation," which it does not. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148; *see also Pac. Nw. Venison Producers*, 20 F.3d at 1014 (finding importation of wildlife was "not a matter in which national uniformity is important" because most states and Canadian provinces ban some species of wildlife and the species vary). Instead, plaintiff argues that since 1992, the "impact" of the Mountain Lion Prohibition is "to discourage and eliminate significant amounts of interstate commerce" related to mountain lion hunting, such as travel to other states and countries, fees paid to guides and outfitters, monies spent on the purchase of hunting ammunition and equipment, lodging, permits and fees, taxidermy work, and commerce related to dog training and the sale of dogs. AOB 9-13, 32-36.

Plaintiff devotes much of its FAC to detailing the loss of profits and income caused by the Mountain Lion Prohibition. *See* ER 39-46, 55-56 (FAC ¶¶ 41-52, 73-75). For example, plaintiff alleges that anywhere from

approximately 2,500-8,000 of its members and other California residents would be interested in mountain lion hunts, and that the Mountain Lion Prohibition discourages these people from travelling outside of California to hunt mountain lions and thereby incurring expenses associated with mountain lion hunting, such as travel, transportation, special equipment and ammunition, taxidermy work, shipping, license fees, accommodations and food. ER 39-44, 55 (FAC ¶¶ 41, 4- 45, 47-50, 73). It states that the total cost for most mountain lion hunting trips outside of California generally ranges from $4,000-20,000, "depending on various factors." ER 43, 55 (FAC ¶¶ 48, 73). The FAC states that the "amount all these hunters would expend on activities they cannot do or are not willing to do with the [Mountain Lion Prohibition] in place represents a substantial, adverse impact on interstate commerce." ER 42 (FAC ¶ 46).

Plaintiff further alleges that it holds an annual auction for mountain lion hunts outside of California and that due to the Mountain Lion Prohibition, its members who are California residents have decided not to bid on these hunts, which reduces the value of these auction items and the revenue it, and sometimes other outfitters, receives. ER 44-45 (FAC ¶ 51). It claims that the Mountain Lion Prohibition also "discourages outfitters and other providers of services related to mountain lion hunting from traveling to

Safari Club chapter meetings (including fundraising banquets) in California to offer or donate for auction hunting" and thus, "eliminates the commerce associated with the travel to the banquets and the California resident undertaking the hunt." ER 45-46 (FAC ¶ 52). Plaintiff asserts that "over the life of [the Mountain Lion Prohibition]," its impact exceeds $15 million. ER 56 (FAC ¶ 75).

Plaintiff confuses the possible diminution of commerce with a violation of the Commerce Clause. Although it faults the district court for "discounting" its allegations of "lost commerce," AOB 31, the financial impact, whatever the dollar amount may be, to plaintiff, its members, the mountain lion hunting industry, and secondary industries that benefit from people traveling out of state to hunt and attend banquets, does not amount to a *substantial burden* on *interstate commerce* within the meaning of the dormant Commerce Clause. The point of the dormant Commerce Clause is to prevent local economic protectionism at the expense of out-of-state interests, not to protect the economic interests of businesses engaged in interstate commerce. *See Carbone*, 511 U.S. at 390. Indeed, the Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28 (1978); *see also Nat'l Optometrists*, 682 F. 3d at 1152

20

& n.11 ("the dormant Commerce Clause does not protect a particular company's profits"). "Evidence that interstate and foreign commerce is in some way affected by the regulations is not enough to meet [plaintiffs'] burden." *Pac. Nw. Venison Producers*, 20 F.3d at 1015. Rather, for "a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001); *see also Nat'l Ass'n of Optometrists*, 682 F.3d at 1148-49. Plaintiff's allegations that the Mountain Lion Prohibition is inhibiting its business and that of its members, the mountain lion hunting industry generally, and/or subsidiary businesses are thus insufficient as a matter of law. *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1148. Moreover, because the Mountain Lion Prohibition does not, either directly or in practical effect, privilege intrastate commerce over interstate commerce and does not apply to activities that are inherently national or require a uniform system of regulation, plaintiff cannot demonstrate that the statute substantially burdens interstate commerce. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Pac. Nw. Venison Producers*, 20 F.3d at 1015; *Sorrell*, 272 F.3d at 109.

Plaintiff's related contention that a substantial burden on commerce could be alleged or proven with evidence of the financial and economic impact of the Mountain Lion Prohibition and that it has "alleged a sufficient monetary impact," *see* AOB 34-36, is misguided. While some dormant Commerce Clause cases do involve an examination of the economic effects of a statute, the determination of whether a law places a substantial burden on interstate commerce is not a quantitative exercise, but a qualitative one. Put another way, it is not the *amount* of burden on commerce, but the *type* of burden, and specifically whether a statute discriminates against interstate commerce in practical effect and/or impedes the flow of goods where national uniformity is required, that is dispositive. *See Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 448 (1960) ("State regulation, based on the police power, which does not discriminate against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand"); *Pacific Nw. Venison Producers*, 20 F.3d at 1015 (noting that certain types of impacts, including disruption of travel and shipping due to a lack of uniformity in state laws, extraterritorial regulation, and impacts that fall more heavily on out-of-state interests, are of "special importance" in *Pike* analysis and stating that "legitimate regulations that have none of these effects arguably are not subject to invalidation under the Commerce

Clause");[3] *Old Bridge Chemicals, Inc. v. New Jersey Dep't of Envtl. Prot.*,

965 F.2d 1287, 1295 (3d Cir. 1992) (stating that only discriminatory burdens

are considered in the *Pike* balancing test).

Thus, in *Pike*, the Court's determination that the challenged statute

placed a clearly excessive burden on commerce in relation to its benefits was

not, as plaintiff suggests, primarily based on the fact that the challenged

statute would have caused plaintiff to spend $200,000 (in 1970 dollars) to

build a processing and packing facility. *See* AOB 34-35. Rather, it was

---

[3] Citing to *Pacific Nw. Venison Producers*, 20 F.3d at 1015, plaintiff contends that most of the impacts of the Mountain Lion Prohibition fall on out-of-state commerce and interests, such as outfitters, guides, local restaurants, hotels, and businesses that support hunting in other states, and that these impacts "are of special importance" with respect to *Pike* balancing. AOB 26. However, the Mountain Lion Prohibition makes no distinction between in-state and out-of-state mountain lions and mountain lion products; all are banned. *See* Cal. Fish & Game Code § 4800. The statute is not "fueled by economic protectionism" and does not "result in the citizens of [California] receiving benefits that are denied to others." *Pacific Nw. Venison Producers*, 20 F.3d at 1012, 1015. Plaintiff's allegations regarding the statute's purported effects on out-of-state merchants are thus immaterial and not afforded extra weight. Further, California's Mountain Lion Prohibition is focused on, and completely eliminates, the market for mountain lions and mountain lion parts within the State. It does not specify whether a market may exist in other states or even whether its own residents may hunt mountain lions or otherwise participate in any market for mountain lions or mountain lion parts in other states where it is legal to do so. Thus, the Mountain Lion Prohibition places a greater burden on intrastate commerce when compared to its mere incidental effects on interstate commerce.

23

because the law, which effectively required all cantaloupes sold in Arizona to be packed in that state, was, in practical effect, discriminatory. *See Pike*, 397 U.S. at 140-42; *see also Tracy*, 519 U.S. at 299 n.12. As the Court noted, the statute functioned as "a straightjacket . . . with respect to the allocation of [plaintiff's] interstate resources," and that it "viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere," or which "impose an artificial rigidity on the economic pattern of the industry." *Id*. at 145-46.[4]

By contrast, the Mountain Lion Prohibition does not, either directly or in practical effect, privilege intrastate commerce over interstate commerce. *See* Cal. Fish & Game Code § 4800. Accordingly, and because the Mountain Lion Prohibition does not apply to activities that are inherently

---

[4] Similarly, and contrary to plaintiff's characterization, in *Ass'n des Eleveurs de Canards*, this Court did not uphold the district court's determination that the ban on foie gras and duck products produced by force feeding was not a substantial burden on interstate commerce simply because plaintiffs in that case overstated the ban's monetary impact. *See* AOB 35 n.25. Rather, it was because the law was not discriminatory, the market for foie gras was not inherently national and did not require uniform system of regulation, and the law's effect was only to preclude a more profitable method of producing foie gras, which is not a substantial burden on interstate commerce. *See* 729 F.3d at 951-52.

national or require a uniform system of regulation, regardless of its financial

impact or effects on commerce, it does not create a substantial burden on

interstate commerce within the meaning of *Pike* and its progeny. *See*

*Sorrell*, 272 F.3d at 109; *Pac. Nw. Venison Producers*, 20 F.3d at 1015.[5]

Plaintiff mistakenly contends that two factors "push [its] claim closer to

the discrimination analysis" and militate in favor of invalidating the

Mountain Lion Prohibition under the *Pike* balancing test. AOB 26 n.19.

Specifically, plaintiff argues that the "direct and intended result" of the

statute is a ban on the importation of mountain lions and mountain lion parts.

Whatever incidental effect the Mountain Lion Prohibition may have on

commerce, intentional or not, that effect would establish neither

discrimination nor a "substantial burden" under *Pike*. *See City of*

*Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) ("The crucial inquiry,

---

[5] Plaintiff's attempt to distinguish *Exxon Corp. v. Governor of Md.*, 437 U.S. 117 (1978) thus fails. Plaintiff argues that instead of causing some business to shift to other suppliers, like the law that was upheld in *Exxon*, the Mountain Lion Prohibition eliminates interstate trade "associated with Californians (who forego mountain lion hunts) traveling to other states and countries to hunt mountain lions." AOB 29-30. Even assuming that this is true, a loss of profits or trade within the mountain lion hunting industry would be an effect on interstate commerce, but it would not be a substantial burden on interstate commerce in the constitutional sense. *See Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Pac. Nw. Venison Producers*, 20 F.3d at 1015.

therefore, must be directed to determining whether [a statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental"); *Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, 753 F.3d 843, 849 (9th Cir. 2013). Plaintiff's related argument that the Mountain Lion Prohibition does not regulate "even-handedly" because it treats mountain lions differently than other animals that can be legally hunted and imported into California is similarly fruitless. An "import ban that simply effectuates a complete ban on commerce in certain items is not discriminatory, as long as the ban on commerce does not make distinctions based on the origin of the items." *Pacific Nw. Venison Producers,* 20 F.3d at 1012; *see also Cavel Int'l, Inc. v. Madigan*, 500 F.3d 551, 555 (7th Cir. 2007) (rejecting Commerce Clause challenge to ban on import and export of horse meat for human consumption and finding no discrimination where "[n]o local merchant or producer benefits from the ban on slaughter.").

### 2. The Mountain Lion Prohibition serves important state interests and its putative benefits outweigh any burden on interstate commerce.

Because plaintiff has not alleged and cannot allege any facts to establish a cognizable burden on interstate commerce, *Pike* balancing is not required and plaintiff's Commerce Clause claim fails. *See* ER 18-20; *Nat'l*

*Ass'n of Optometrists*, 682 F.3d at 1155-56 ("If a regulation merely has an effect on interstate commerce, but does not impose a significant burden on interstate commerce, it follows that there cannot be a burden on interstate commerce that is 'clearly excessive in relation to the putative local benefits' under *Pike*."); *see also Nat'l Paint Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) ("[T]he ordinance affects interstate shipments, but it does not discriminate against interstate commerce in either terms or effect. No disparate treatment, no disparate impact, no problem under the dormant commerce clause."). However, even if the Court were to undertake this analysis, the Mountain Lion Prohibition would be valid.[6]

---

[6] Plaintiff relies on *Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, 753 F.3d 843, for the proposition that a substantial burden on commerce is not "an absolute prerequisite" for the application of *Pike* balancing and a violation of the dormant Commerce Clause. AOB 27 n.20. In *Yakima Valley*, this Court, in rejecting a dormant Commerce Clause challenge, determined that the regulations at issue did not create a substantial burden on interstate commerce. 731 F.3d at 848. The Court then stated that its "conclusion that the burden on interstate commerce is insignificant would normally end the constitutional inquiry" but addressed plaintiff's claims that the benefits provided by the regulation were "illusory or nonexistent." *Id.* at 848-49 (citing *Nat'l Ass'n of Optometrists*, 682 F.3d at 1155). The Court did not perform *Pike* balancing; rather, it rejected plaintiff's contention that the purported benefits of the regulation were illusory and thus concluded it would "not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." *Id.* at 849. Plaintiff's reliance on *Yakima Valley* is misplaced.

The Mountain Lion Prohibition, including the prohibition on the importation and possession of mountain lions and parts of mountain lions legally killed in other states, was enacted to conserve and protect mountain lion populations both within California and generally and to prevent the cruel practice of trophy hunting. *See* Cal. Fish & Game Code §§ 2780, 4800; ER 64-67. It is well settled that the protection of wildlife and the environment and the prevention of animal cruelty are legitimate state interests. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147; *Association des Eleveurs*, 729 F.3d at 952; *Pacific Nw. Venison Producers*, 20 F.3d at 1013.

Plaintiff does not suggest otherwise, but alleges that (1) "well-regulated mountain lion hunting is not cruel and unnecessary," ER 46 (FAC ¶ 54); (2) "the State has no legitimate interest in discouraging an activity outside of California, including … discouraging California residents from partaking in a legal and necessary activity that is not animal cruelty," ER 56 (FAC ¶ 76); (3) the Mountain Lion Prohibition does not help conserve wildlife in California, ER 56 (FAC ¶ 76); and (4) the State can promote its interests in ways that would have a "lesser impact on interstate activities," ER 56-57 (FAC ¶ 77). These allegations fail to satisfy plaintiff's pleading burden, *Iqbal*, 556 U.S. at 678, and do not rebut the strong presumption of validity

afforded state laws, *see Missouri Pac. R. Co. v. Norwood*, 283 U.S. 249, 254, *modfied sub nom. Missouri Pac. R.R. Co. v. Norwood*, 283 U.S. 809 (1931); *Pacific Nw. Venison Producers*, 20 F.3d at 1014; *see also Legislature v. Eu*, 54 Cal. 3d 492, 501 (Cal. 1991) ("[A]ll presumptions favor the validity of initiative measures.").

The people of California enacted the Mountain Lion Prohibition, in part, to conserve and protect mountain lions based on the species' cultural value as California's "last magnificent predator," and to discourage what they adjudged the cruel practice of trophy hunting mountain lions. ER 66. That plaintiff and/or other states and federal or state officials may disagree with this assessment does not undermine the legitimacy of the State's interest in enacting the Mountain Lion Prohibition. *See Cavel Int'l*, 500 F.3d at 557 ("States have a legitimate interest in prolonging the lives of animals that their population happens to like.") (citing *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979)); *Cresenzi Bird Importers, Inc. v. State of N.Y.*, 658 F. Supp. 1441, 1447 (S.D.N.Y. 1987) ("The State has an interest in cleansing its markets of commerce which the Legislature finds to be unethical. Moreover, a state may constitutionally conserve wildlife elsewhere by refusing to accept local complicity in its destruction."); *cf. Viva! Intern. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, 41 Cal. 4th

929, 952 (Cal. 2007) (upholding California's ban on import of kangaroo pelts and products, based on the state's desire to protect the species from harm).

Insofar as plaintiff argues that the Mountain Lion Prohibition is irrational and its benefits are illusory, it has not alleged, and cannot allege, any facts tending to show that the State's interests in the protection and conservation of wildlife and the prevention of animal cruelty are "tenuous" and/or that the Mountain Lion Prohibition furthers them "so marginally" and that it "interfere[s] with commerce so substantially," *Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670 (1981), as to be "a fig leaf masking discrimination." *Yakima Valley*, 731 F.3d at 849; *see also Association des Eleveurs*, 729 F.3d at 952; *Pacific Nw. Venison Producers*, 20 F.3d at 1013. Instead, plaintiff insists that the prevention of animal cruelty cannot be considered as an interest underlying the Mountain Lion Prohibition because: (1) defendants did not offer it as a justification in their opening brief in support of their original motion to dismiss; (2) it is not mentioned in the legislative findings accompanying the Mountain Lion Prohibition; (3) it is merely an "emotional" opinion that mountain lion hunting is cruel, which should not be given any weight; and (4) in plaintiff's opinion, as well as the

opinion of others, hunting and killing mountain lions is not cruel. AOB 38-46.

However, regardless of whether defendants mentioned the prevention of animal cruelty as a justification for the Mountain Lion Prohibition in their first brief on a motion that is not the subject of this appeal, which they did, *see* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, District Court Case No. 2:14-cv-01856-JAM-AC, ECF No. 15, 3 n.1,[7] or whether the prevention of animal cruelty was explicitly set forth in the legislative findings, and despite plaintiff's disagreement with the people of California's assessment, the legislative history of the Mountain Lion Prohibition demonstrates that it was enacted, in part, to prevent what the people considered to be the cruel practice of trophy hunting for mountain lions. *See* ER 64-67.

Plaintiff's contentions that this Court cannot consider the State's interest in preventing animal cruelty are baseless. *See* AOB 41-43. There is no requirement that a governmental interest be formally codified in

---

[7] The brief in support of defendants' motion to dismiss by amici the Humane Society of the United States and the Fund for Animals also discussed the legislative history of the Mountain Lion Prohibition, with particular emphasis on the State's interest in the prevention of animal cruelty. District Court Case No. 2:14-cv-01856-JAM-AC, ECF No. 18-2, 6-9.

legislative findings (or anywhere) to be given weight. To the contrary, "a state need not provide a justification or rationale for its legislative decision." *King v. Christie*, 981 F. Supp. 2d 296, 325 (D.N.J. 2013), *aff'd*, *King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014); *cf. U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature"); *Safari Club Int'l v. Harris*, No. 2:14-CV-01856-GEB-AC, 2015 WL 1956869, at *2 (E.D. Cal. Apr. 29, 2015) ("Judicial notice is taken of the California Ballot Pamphlet for Proposition 117 since this information about the Import Ban was publicly available to voters and includes the argument that "mountain lion hunting is cruel and unnecessary").[8] Moreover, as discussed above, preventing animal cruelty is not the only interest asserted; the law was also enacted to protect and promote the conservation and sustainability of

---

[8] Plaintiff wrongly asserts that the Court should not consider legislative history of voter initiatives. AOB 45. The Court may take notice of the legislative history of state laws. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir.2012); *Safari Club Int'l*, 2015 WL 1956869, at *2. The cases cited by plaintiff, *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003), and *ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197, 1205 (ED. Cal. 2009), addressed constitutional challenges to election-related disclosure requirements, and are inapposite.

mountain lion populations and habitats.  *See* Cal. Fish & Game Code § 2780 (a), (d), (e).

Plaintiff's repeated assertions that California's interests are illusory and irrational, both in its FAC and in its brief to this Court, are at best unsupported legal conclusions that are insufficient to meet its pleading burden.  *Iqbal*, 556 U.S. at 678.  Plaintiff might believe that the Mountain Lion Prohibition is unwise or prefer that it be written differently, but these are political considerations that are immaterial to the constitutional claims it attempts to allege.  In the context of dormant Commerce Clause claims, courts should not "second guess the empirical judgments of lawmakers concerning the utility of legislation."  *CTS Corp.*, 481 U.S. at 92; *Pac. Nw. Venison Producers*, 20 F.3d at 1016 ("Courts should decline to second-guess such legislative judgments when the evidence of the regulatory measure's effect on interstate commerce is so tenuous."); *see also Nat'l Ass'n of Optometrists*, 682 F.3d at 1157 (stating that under rational basis review of dormant Commerce Clause claim, courts should "not consider any evidence regarding alternative means for the State to achieve its goals").  Although plaintiff asserts that the Mountain Lion Prohibition does not achieve (and/or that the State has failed to explain how it achieves) the State's interests in conserving and protecting mountain lions and in preventing animal cruelty,

even if this were true, under the *Pike* analysis, courts consider only the *putative* benefits of a statute. *See Nat'l Ass'n of Optometrists*, 682 F.3d at 1155 (noting that *Pike* "does not mention actual benefits as part of the test for determining when a regulation violates the dormant Commerce Clause"); *see also id.* at 1156 (stating that where no constitutionally significant burden on interstate commerce has been shown, courts give even greater deference to the asserted benefits of a state law or regulation).

Finally, plaintiff's allegations that the State's interests could be achieved through means that would have a "lesser impact" are legally irrelevant. Where, as here, a law is not discriminatory and places no significant burden on interstate commerce, it is "inappropriate for [a court] to set them aside based on a conclusion that the State's purposes could be served as well with alternative laws." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1157. The Ninth Circuit has instructed that in such cases, courts should "not consider any evidence regarding alternative means for the State to achieve its goals." *Id.*; *see also id.* at 1156 (noting that where no constitutionally significant burden on interstate commerce has been shown, courts give even greater deference to the asserted benefits of a state law or regulation).

The FAC contains no allegations plausibly suggesting that the State's interests are illegitimate or that the burden on interstate commerce caused by the Mountain Lion Prohibition clearly exceeds its local benefits. *See Pike*, 397 U.S. at 142. Accordingly, and because plaintiff has not stated, and cannot state, a claim under the Commerce Clause, the district court properly dismissed plaintiff's First Claim for Relief.

### 3.   Plaintiff is not entitled to discovery.

Plaintiff's argument that it should be given an opportunity to "discover, generate, and present further facts" in support of its claims is baseless. AOB at 5. Although plaintiff notes that in dormant Commerce Clause cases, parties are often allowed to put forth evidence regarding the substantial burden placed on commerce by a law and/or its putative benefits, AOB 14-15, 17, 22-23, 36-38, this is not compulsory or automatic. Rather, and unlike in the cases upon which it relies, *see* AOB 22 n.17, plaintiff has failed to allege plausible claims for relief, and thus is not entitled to discovery and/or to proceed to summary judgment or trial. *See Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1097 (N.D. Cal. 2014) ("plaintiffs must plead sufficient facts showing that they are plausibly entitled to relief before those facts may be weighed by a jury"); *see also Iqbal*, 556 U.S. at 678 ("Rule 8 . . . does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions"); *PTI, Inc. v. Philip Morris, Inc.*, 100 F. Supp. 2d 1179, 1202-03 (C.D. Cal. 2000) (dismissing Commerce Clause claim where plaintiffs could not allege a cognizable claim that statute's burden on interstate or foreign commerce was "clearly excessive" in relation to the statute's putative benefits).[9]

### B. The First Amended Complaint Fails to State a Claim Under 42 U.S.C. Section 1983.

Plaintiff's Third Claim for Relief alleges that defendants are liable under 42 U.S.C. section 1983 because enforcement of the Mountain Lion Prohibition deprives its members of guaranteed constitutional rights. ER 59 (FAC ¶ 86). However, because plaintiff has failed to adequately allege a violation of the dormant Commerce Clause, or any other constitutional right, for the reasons set forth above, the FAC necessarily fails to state a claim under section 1983 and was properly dismissed. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147 n.10.

---

[9] The types of facts plaintiff seeks to establish through discovery, such as proof that the Mountain Lion Prohibition is not effective and/or the dollar amount that it has cost the mountain lion hunting industry, are legally irrelevant to its putative claims. *See CTS Corp.*, 481 U.S. at 92. Further, given that the Mountain Lion Prohibition has been in effect for almost 24 years and all the information relevant to plaintiff's constitutional claims is publicly available, plaintiff cannot credibly suggest that discovery would allow it to allege cognizable claims.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court affirm the decision of the district court.

Dated: July 27, 2016          Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
DOUGLAS J. WOODS
Senior Assistant Attorney General
TAMAR PACHTER
Supervising Deputy Attorney General

*/s/ Alexandra Robert Gordon*
ALEXANDRA ROBERT GORDON
Deputy Attorney General
*Attorneys for Defendants-Appellants*

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**SAFARI CLUB INTERNATIONAL,**

Plaintiff-Appellant,

**v.**

**KAMALA HARRIS, in her official capacity as the Attorney General of the State of California; CHARLTON H. BONHAM, in his official capacity as the Director of the California Department of Fish and Wildlife,**

Defendants-Appellees.

---

## STATEMENT OF RELATED CASES

To the best of our knowledge, there are no related cases.

Dated:  July 27, 2016            Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
DOUGLAS J. WOODS
Senior Assistant Attorney General
TAMAR PACHTER
Supervising Deputy Attorney General


*/s/ Alexandra Robert Gordon*
ALEXANDRA ROBERT GORDON
Deputy Attorney General
*Attorneys for Defendants-Appellants*

# CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED.R.APP.P 32(a)(7)(C) AND CIRCUIT RULE 32-1
## FOR 16-15255

I certify that: (check (x) appropriate option(s))

[x] 1. Pursuant to Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached **opening/answering/reply/cross-appeal** brief is

[x] Proportionately spaced, has a typeface of 14 points or more and contains <u>8,179</u> words (opening, answering and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words

or is

[ ] Monospaced, has 10.5 or fewer characters per inch and contains _____ words or ___ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

[ ] 2. The attached brief is **not** subject to the type-volume limitations of Fed.R.App.P. 32(a(7)(B) because

[ ] This brief complies with Fed.R.App.P 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages.)

or

[ ] This brief complies with a page or size-volume limitation established by separate court order dated _____ and is

[ ] Proportionately spaced, has a typeface of 14 points or more and contains _____ words,

or is

[ ] Monospaced, has 10.5 or fewer characters per inch and contains ___ pages or ___ words or ___ lines of text.

[ ] 3. Briefs in **Capital Cases**.
This brief is being filed in a capital case pursuant to the type-volume limitations set forth at Circuit Rule 32-4 and is

[ ] Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words).

or is

[ ] Monospaced, has 10.5 or fewer characters per inch and contains ___ words or ___ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text).

☐ 4. **Amicus Briefs**.

☐ Pursuant to Fed.R.App.P 29(d) and 9th Cir.R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7,000 words or less,

or is

☐ Monospaced, has 10.5 or few characters per inch and contains not more than either 7,000 words or 650 lines of text,

or is

☐ Not subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed.R.App.P. 32 (a)(1)(5).

| July 27, 2016 | /s/ Alexandra Robert Gordon |
|---|---|
| Dated | Alexandra Robert Gordon |
| | Deputy Attorney General |

# CERTIFICATE OF SERVICE

Case Name: **Safari Club International v.**      No.      **16-15255**
            **Kamala D. Harris, et al.**

I hereby certify that on <u>July 27, 2016,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**ANSWERING BRIEF OF DEFENDANTS-APPELLEES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>July 27, 2016,</u> at San Francisco, California.

|  |  |
|---|---|
| N. Newlin | /s/ N. Newlin |
| Declarant | Signature |

SA2016100834
20879165.doc